Joel Whitney, K-99429
Avenal State Prison
P.O. Box 9, 450-1-70-Low
Avenal, CA 93204




FEB 0 1 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Joel Whitney, PRO SE<br>Movant<br><br>vs.<br><br>Arnold Schwarzenegger, et al.<br>Respondent | Case No. C08 0040 PJH (PR)<br><br>EX PARTE MOTION REQUESTING THE SAME THREE JUDGE COURT SEEING THE PLATA, COLEMAN, ARMSTRONG CLASS ACTIONS AND ISSUE A PRISONER RELEASE ORDER DUE TO PRISON OVERCROWDING AMENDMENT |

INTRODUCTION

Movant, Joel Whitney, respectfully requests this Honorable Court join his ex parte motion to the Plata, Coleman, and Armstrong class actions before a three judge court and have that same Three Judge Court issue a prisoner release order to the California Department of Corrections and Rehabilitation (hereinafter "CDCR") on Movant's behalf pursuant to 18 U.S.C., section 3626(a)(3).

Movant alleges the same constitutional violations and prison conditions exist for him due to the severity of prison overcrowding as exists in the Plata, Coleman, and Armstrong class actions.

ALLEGATIONS

Movant alleges the following conditions are violating his constitutionally guaranteed Eighth Amendment rights due to the severity of prison overcrowding:

I. Medical, mental health, and dental services are far below the "minimal amounts" of care and treatment that they

should be.

II. As a result of severe prison overcrowding, dangerous and sometimes fatal communicable diseases such as valley fever, hepetitus, AIDS, tuberculosis, and staph infections, as pertinent examples, are widespread throughout California's prisons.

III. Excessive amounts of health hazards exist in inmate housing and living areas due to correctional capacities being in excess of two hundred percent (200%) in most cases and due to sewer and other systems being too inadequate and old to be able to handle such extensively overcrowded capacities.

IV. Movant's personal safety regarding dangerous and ever-increasing amounts of confrontations between prisoners due to increased amounts of stress, tension, and limited staffing is at stake and is now at the point of being cruel and unusual punishment due to the severity of prison overcrowding.

ANALYSIS

I. The Receiver's Reports

In his May 15, 2007 Receiver's Bi-Monthly Report, re: "Overcrowding," No. C01-1351-T.E.H., Mr. Robert Sillen stated to the Court on page 30, lines 10-15, 18-25:

> "As reported in the Fourth Bi-Monthly Report, overcrowding has increased the number and seriousness of infectious and dangerous communicable diseases, jeopardizing prisoners, staff, and the public. Thus far, system wide outbreaks have been avoided, however, given the number of prisoners, conditions in gyms and hallways converted to housing units, the velocity of prisoner movement between institutions and in and out of the CDCR itself, the risk cannot be underestimated.
>
> "Many CDCR prisons are unable to sustain the basic delivery of medical, mental health, and dental services because of limited staffing (clinical and

custody) and an overwhealming number of prisoner/patients who require care. Every day, many California prison wardens and healthcare managers make the difficult decisions as to which of the class actions, Coleman, Perez, Armstrong or Plata they will fail to comply with because of staff shortages and patient loads. This in turn creates crisis conditions (as described in the Fourth Bi-Monthly Report concerning **Avenal State Prison**) which, because it requires immediate attention, diverts the Receiver's resources from Plan of Action related activities."

In Mr. Sillen's Sixth Quarterly Report on page 86, lines 10-17, he again states to the Court:

"For the present the Receiver is attempting to work with the Administration as the funding of needed prison facilities by the issuance of bonds continues to be the option of choice on the part of California's elected officials as well as the Receiver. The problem, however, provides focus concerning two on-going issues. First, despite promises to the contrary, the State's ever thickening bureaucratic web and planned incompetence continues to hinder efforts by the Receiver to effectuate change within the context of State law. Second, even the best efforts by the Administration continue to be thwarted by politics and bureaucracy as usual."

Movant, from reading the Receiver's reports in their entireties, alleges that State officials are deliberately indifferent towards his health, safety, welfare, and well-being due to their lack of actions in reducing prison overcrowding and therefore, in failing to provide Movant with a reasonable amount of safe and secure living conditions and environment.

LEGAL ARGUMENT

Under the U.S. Constitution's Eighth Amendment, Movant has the right by Federal law to be free from cruel and unusual punishment, to be free from a reasonable amount of danger from other prisoners, and to be free from dangerous conditions

arising from unsanitary housing and living conditions; Movant was not sentenced to suffer any of these conditions and deprivations of his Eighth Amendment constitutional rights, only to state prison. Unlike other constitutional rights which must be balanced against security and other concerns when applied to prisoners, "any violation of Eighth Amendment rights can never be justified" under any circumstance. The Eighth Amendment is not a "maybe" or "sometimes" proposition. (See Hutto v. Finney (1978) 437 U.S. 678, 685; Newman v. Alabama (5th Cir. 1977) 559 F.2d 283; Battle v. Anderson (10th Cir. 1977) 564 F.2d 388; and Holt v. Sarver (E.D.Ark. 1970) 309 F.Supp. 362, aff'd 442 F.2d 304 (8th Cir. 1971).)

Movant's "objective components" have already been met in that they consist of "below minimum amounts" of medical, mental health, dental care and treatments, personal safety, and inadequate sanitation all of which are caused by severe prison overcrowding, which also amounts to a lack of "civilized measures of life's necessities" and cruel and unusual punishment. (See Hoptowit v. Ray (9th Cir. 1982) 682 F.2d 1237, 1246.)

Pursuant to 28 U.S.C., section 2284 and 18 U.S.C., section 3626(a)(3), Movant respectfully requests that this Honorable Court grant his ex parte motion for the same Three Judge Court overseeing the Plata, Coleman, and Armstrong class actions and join his motion to those class actions.

## II. Standards

18 U.S.C., section 3626(a)(3)(C) authorizes a party to a civil action concerning prison conditions to file a request for a

prisoner release order.

> A prisoner release order may not be issued unless—
>
> (i) a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the federal right sought to be remedied through the prisoner release order; and
>
> (ii) that the defendant has had a reasonable amount of time to comply with previous court orders.

18 U.S.C., 3626(a)(3)(A)(i)(ii). These requirements have been met. The Court ordered the Governor of the State of California to reduce the State's prison population as far back as 2004-2005, if not earlier. To date, California's prison population has increased not decreased. The defendants have had more than a reasonable amount of time in which to comply. Moreover, instead of complying with the Court's orders, the defendants have deliberately tried to oppose the Court itself and are continuing to do so to date. Since these requirements have been met, "a federal judge before whom a civil action with respect to prison conditions is pending who believes that a prisoner release order should be considered may sua sponte request the convening of a three judge court to determine whether a prisoner release order should be entered." 18 U.S.C., section 3626(a)(3)(D). The three judge court "shall enter a prisoner release order" only if the court finds by clear and convincing evidence that—

> (i) crowding is the primary cause of the violation of the Federal right (see page 2, lines 22-26); and
>
> (ii) no other relief will remedy the violation of the Federal right (see page 2, lines 27-28; page 3, lines 1-6) (also see page 3, lines 12-16).

18 U.S.C., section 3626(a)(3)(E).

Therefore, Movant respectfully requests that a Three Judge

Court consider the following form of relief for Movant:

(1) that Movant be allowed to finish out the rest of his sentence under house arrest;
(2) that Movant be continuously monitored while under house arrest by wearing a monitoring device; and
(3) that Movant agree to and obey any and all stipulations and conditions made by the Court.

This would remedy Movant's Eighth Amendment violations and would help to alleviate overcrowded prison conditions. This would also provide Movant with an opportunity to demonstrate to the Court that he is no threat to public safety and can contribute to the betterment of society and promote to the common good of society by operating a paralegal home office in his home via the internet.

III. Issues

**A.** One of the most obvious issues at stake in this section is the Eighth Amendment constitutional guarantee of adequate medical, mental health, dental care and services as well as the Movant's personal safety concerns (see Coleman v. Wilson, 912 F.Supp. 1282, 1297-1298 (E.D.Cal. 1995)(citing, inter alia), Farmer v. Brennan, 115 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31-32 (1993)).

**B.** Due to the severity of prison overcrowding and prison understaffing (medical, mental health, dental, and custody) (see page 2, lines 27-28; page 3, lines 1-6), there are increased stresses, strains and tensions as one result of overcrowding which directly contributes to increased amounts of confrontations among prisoners, which then leads to increased amounts of violence. The typical design capacities in most California prisons has now exceeded two hundred percent (200%) and is still

continuing to rise on a daily basis.

Under the U.S. Constitution's Eighth Amendment, Movant has an absolute right to be reasonably protected from violence and sexual assaults. Movant has already suffered through both of these types of assaults on more than one occasion and will continue to remain a victim of these kinds of assaults as long as he is in the custody of the CDCR due to his medical and mental health conditions. (See Whitney v. Simonsen, et al., Case No. 2:06-cv-1488-FCD-GGH, Movant's 1983 civil suit.) Movant, under the Americans with Disabilities Act (hereinafter "A.D.A.") has a permanent physical disability and is dependent upon a knee brace and a cane for ambulation. Movant is also still suffering from post traumatic stress disorder (hereinafter "PTSD") from the physical and sexual assaults he has experienced (Movant can supply the Court with medical reports concerning his condition if the Court so desires).

Since both clinical and custody staff are severely under-staffed and limited, the amounts of health and safety violations are rising. Upon consideration of the Movant's medical and mental health conditions, this is an even more increased risk for the Movant because he cannot defend himself from harm from other prisoners not to mention communicable diseases due to overcrowding. This is a direct and serious violation of Movant's Eighth Amendment rights.

"A condition which has not yet caused any present injury may still violate the Eighth Amendment" if there is imminent danger" and the condition "is sure or very likely" to cause serious illness and/or needless suffering.

(See Helling v. McKinney, supra.)

Prisoners do not need to wait until an assault occurs in order to obtain relief (Leeds v. Watson (9th Cir. 1980) 630 F.2d 674; Berg v. Kincheloe (9th Cir. 1986) 794 F.2d 457, 459).

C. Prison overcrowding has risen to the level of cruel and unusual punishment (Hutto v. Finney, supra)(Eighth Amendment claim stated when average of four (4) and sometimes ten (10) or eleven (11) prisoners confined in 8-by-10-foot punitive isolation cell for more than thirty (30) days); Williams v. Griffin 952 F.2d 820, 825-826 (4th Cir. 1991)(Eighth Amendment stated when overcrowding, unsanitary and deficient plumbing left one (1) toilet per twelve (12) inmates, four (4) showers for ninety-six (96) inmates, floors flooded with sewage, infestation of vermin and insects and deprivation of blankets and coats); and Akao v. Shimoda 832 F.2d 119, 120 (9th Cir. 1987)(per curiam)(Eighth Amendment claim stated when prisoners alleged that overcrowding led to increased stress, tension, communicable diseases, and increased confrontations between prisoners), cert. denied, 485 U.S. 993 (1998)).

IV. Ex Parte Motion Should Be Granted

The reasons why Movant's ex parte motion should be granted and why motion should be joined to Plata, Coleman, and Armstrong in consideration of issuing Movant a prisoner release order are:

1. Movant's grounds are legitimate and Movant has good cause.
2. If released from CDCR's custody and given house arrest, Movant could be monitored constantly by willingly wearing a monitoring device, and Movant's Eighth Amendment violations would become moot.
3. The reasonings, allegations, and citations used by Movant and the conditions of custodial release by the CDCR as set forth and ordered by the Three Judge Court

could be used as a guideline (at least in part) in considering custodial releases for prisoners who meet these and/or other requirements and conditions for said consideration if they agree to abide by the court's terms and conditions thus, aiding in reducing prison overcrowding and helping to reduce the costs of medical, mental health, dental care and services, plus other costs created from incarceration. This would also help to reduce the amounts of civil suits in the courts.

4. Movant Would Pose No Threat to Public Safety:

(a) Movant is fifty-six (56) years of age and has never been incarcerated in any state or federal institution before. He therefore cannot be considered a "recidivist" and is therefore far less likely to re-offend.

(b) As mentioned earlier, Movant is permanently disabled and must rely upon a knee brace and a cane for ambulation. This would further reduce the liklihood of the Movant re-offending.

(c) The crime for which Movant was convicted of has the second lowest recidivism rate (17.19%) of all crimes and this also reduces the chances even further of the Movant re-offe nding. (Source: The CDCR Office of Research.)

(d) Movant has already served a substantial portion of his sentence.

(e) Movant would agree to house arrest while wearing a monitoring device for the duration of his sentence, or longer, if the Court so orders, and would abide by any and all court orders/conditions the Court deems necessary and/or proper. This too, would aid in reducing the liklihood even further of the Movant re-offending.

(f) As another condition for house arrest, Movant would voluntarily have any and all civil suits currently in the courts dismissed.

(g) Upon being released and placed under house arrest, Movant wishes to demonstrate his commitment to the Court of functioning in society in a positive manner and helping to improve the public safety by pursuing a home business career as a paralegal. Movant has already contacted Blackstone Career Institute and arranged for their course studies in Legal Assistant /Paralegal by signing their student agreement contract and submitting course payment through his grandmother's help.

(h) Movant has a ninety-four (94) year old grandmother who is not in good health. Movant is the only family member capable of caring for her as she can attest to under oath.

(i) Movant's grandmother was present at all of Movant's court dates (1997-1998). Although Movant has no proof of his innocence, his grandmother is aware of his innocence. She is further aware that the Movant's so-called "friend" actually framed him for

the crime Movant's "friend" committed. Movant's "friend" was later arrested for the same crime that Movant was found guilty of. (Please see: People of the State v. Terrence J. Ulinski (Case No. Unknown to Movant).) Movant's grandmother can also attest to all of the above information under oath.

WHEREFORE, Movant prays this Honorable Court grant Movant's motion and issue a prisoner release order to the CDCR ordering Movant to be placed under house arrest and wear a monitoring device for the length of time as determined by this Honorable Court, and at the very least, for the rest of the Movant's sentence.

FURTHERMORE, Movant requests his motion be joined to the Plata, Coleman, Armstrong class actions already before a three judge court, and requests the same Three Judge Court.

Movant requests this Honorable Court to please excuse any errors contained in this ex parte motion or in its submission thereof since Movant is not trained in the law. Movant thanks this Honorable Court for its time, patience, understanding, and fairness.

DECLARATION

I, Joel Whitney, declare under penalty of perjury under the laws of the State of California that:

1. I am over the age of eighteen (18) years of age;
2. that I am the Movant in this matter of such great importance; and
3. that all of the above is true and correct.

Dated: January 29, 2008

Joel Whitney, Movant

/////

/////

/////